IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| CHESTER FINNEY #14393956 | § | |
| v. | § | CIVIL ACTION NO. 9:12cv4 |
| CAPTAIN MARSHALL, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Chester Finney, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c). The named defendants are Captain A. Marshall, Officer J. Mitchell, and Officer D. Sterling.

In his complaint, Finney said that he was moved from the laundry to a job assignment in the kitchen. He asked for Sundays off because he is Mormon and had a meeting with the warden, but was told that "religious matters don't apply here." Finney stated that he received disciplinary cases because he won't work on Sundays, and says "all of the other religions are accommodated except for his.

In an attachment to his complaint, Finney says that he is asserting a "systematic maladministration of this state's laws," stating that "the blacks and Mormons" are being subjected to a denial of equal protection. Second, Finney says that "the hallmark of property under the Fourteenth Amendment is the Due Process Clause," including an individual's entitlement to the religious rights grounded in state law, which cannot be removed except for cause.

Finney next cites to federal criminal law concerning the liability of parties, and goes on to refer to requirements for hearings under the Due Process Clause. He states in his fifth ground that it is the state's system itself which destroys his property interest to his religious rights without

1

affording him due process. After again referring to federal criminal statutes, Finney says that he has been a member of the Mormon church for 20 years and that he told Captain Marshall about this, but that he has been discriminated against and that he has been the victim of retaliation through the writing of disciplinary cases. Finney states that unnamed officers have commented that "we don't like Mormons because they have too many wives, and they marry and have sex with little girls under age." He again complains about discrimination against Mormons and blacks and says that "the Mormon church is the only church not honored." In a separate motion which essentially restates the claims presented in his attachment, Finney asks that he be discharged from confinement.

An evidentiary hearing was conducted on October 23, 2012, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing, Finney testified that he was assigned to work in the kitchen and was required to work on Sundays, contrary to his religious faith. One kitchen sergeant found substitutes for him, but this officer was transferred. Finney would not work on Sundays and began getting disciplinary cases for this refusal; after he had been in the kitchen for a month, he had received four such cases, and the last one was a major case. As a result of this case, Finney stated that he was transferred from the general population kitchen to the G-5 (close custody) kitchen. He stated that sometimes the officers in the close custody kitchen, where he now works, let him take Sundays off. Finney stated that he lost classification status as a result of the disciplinary cases, but then said that his loss of such status came in a disciplinary case for possession of nuisance contraband, not refusing to work in the kitchen.

Finney complained that Captain Marshall was the kitchen captain, indicating that he oversaw the refusal to allow him to have Sundays off. He stated that Officer Mitchell had written him a case for failing to clear off the drink station, even though Mitchell was an officer in the general population kitchen and Finney was assigned to the close custody kitchen at the time that the case was written. Finney testified that Mitchell wrote the case because Marshall told him to, and that this proved retaliation; however, he conceded that he did not know why Marshall or Mitchell would retaliate against him. Although he later indicated that the alleged retaliation may have been motivated by

2

grievances, he offered no factual basis for this supposition. Finney indicated that Officer Sterling had also written him disciplinary cases for refusing to work. For relief, Finney seeks monetary damages and release from confinement.

Warden Dewberry, a TDCJ official also present at the evidentiary hearing, testified under oath that it was "very rare" to make exceptions for religious preferences in job assignments. He noted that the packing plant had Muslims working there even though the Muslim inmates are not supposed to handle pork; Dewberry stated that if an inmate was required to work, he had to work. Dewberry also observed that Finney had lost no good time in any of the disciplinary cases which he mentioned and that the only time that Finney lost classification status was in the case involving the nuisance contraband. Finney responded that the alleged "nuisance contraband" was in fact a legal magazine, and that he was going to take it to the law library but did not have time to return to his cell to get it after leaving work and before going to the library.

## Legal Standards and Analysis

Finney's primary complaint is that he was required to work on Sunday, contrary to his religious beliefs. To the extent that his complaint may be read as raising a claim under the Religious Land Use and Institutionalized Persons Act, such a complaint is without merit; the Fifth Circuit has held that this Act does not create a cause of action for damages against Texas or the individual defendants in their official capacities, nor does it create a cause of action against the prison officials in their individual capacities. DeMoss v. Crain, 636 F.3d 145, 151 (5th Cir. 2011). Although Finney could maintain claims for declaratory and injunctive relief under RLUIPA, the only such relief which he actually seeks is discharge from confinement, which relief is only available through habeas corpus and not under RLUIPA. See Kyles v. Garrett, 353 Fed.Appx. 942, 2009 WL 4250078 (5th Cir., November 30, 2009), citing Wilkinson v. Dotson, 544 U.S. 74, 78-82 (2005) (noting that "habeas corpus was the exclusive remedy for state prisoners seeking to invalidate the duration of their confinement - either directly, through an injunction compelling speedier release, or indirectly, through a judicial determination that necessarily implies the unlawfulness of the state's custody").

Finney has not sought relief which is available under RLUIPA and so any claims which he may raise under this statue are without merit.

Finney's claim for monetary damages is properly cognizable under the Civil Rights Act, 42 U.S.C. §1983. Claims for violations of the right of free exercise of religion which are brought under Section 1983 are reviewed under the standards set out by the Supreme Court in Turner v. Safley, 482 U.S. 78, 89 (1987) and O'Lone v. Estate of Shabazz, 482 U.S. 342, 349-53 (1987). This standard requires the Court to examine whether a prison regulation at issue is "reasonably related to legitimate penological interests." Requiring inmates to work is a legitimate penological interest. Ali v. Dewberry, civil action no. 6:10cv454, 2011 WL 1882275 (E.D.Tex., April 21, 2011, *Report adopted at* 2011 WL 1882272 (E.D.Tex., May 17, 2011), no appeal taken); Manley v. Fordice, 945 F.Supp. 132, 134 (S.D.Miss. 1996). In Ali, this Court cited O'Lone as stating that the requirement that inmates work is rationally related to a number of legitimate penological objectives, including rehabilitative efforts, preventing idleness, saving money through the performance of tasks which would otherwise have to be contracted out, and the maintenance of order and discipline. Ali, 2011 WL 1882275, slip op. at *10, *citing* O'Lone, 482 U.S. at 351-53. Thus, the requirement that Finney work is rationally related to legitimate penological objectives.

The Court has found no case within the Fifth Circuit providing that inmates are entitled to blanket religious exemptions from working on the Sabbath. Ali involved a Muslim inmate who unsuccessfully sought an exemption on religious grounds from working in the packing plant. In Estate of Thornton v. Caldor, Inc., 472 U.S. 703, 710-11 (1985), the Supreme Court held that a state law providing Sabbath observers with an absolute right not to work on their Sabbath violated the Establishment Clause. *See also* Trans World Airlines v. Hardison, 432 U.S. 63, 77-85 (1977) (airline not required to accommodate employee's preference not to work on his Sabbath where such accommodation would create an undue hardship); O'Lone, 482 U.S. at 351 (work requirements limited inmate attendance at Jumu'ah religious service, implying that the inmates did not have an exemption from working on the day that Jumu'ah was held). The fact that Finney was required to

work on Sundays does not itself show a violation of the Constitution. His claim on this point is without merit.

Nor has Finney shown that this requirement violates equal protection. In order to demonstrate a violation of his equal protection rights, the plaintiff must show purposeful discrimination resulting in a discriminatory effect among persons similarly situated. Muhammed v. Lynaugh, 966 F.2d 901, 903 (5th Cir. 1992). In this case, Finney simply made conclusory allegations that Mormons were the only religious group singled out and required to work on the Sabbath contrary to their faith; however, the Fifth Circuit has held that vague and conclusory allegations that equal protection rights have been violated are insufficient to set out an equal protection claim. Gregory v. McKennon, 430 Fed.Appx. 306, 2011 WL 2473714 (5th Cir., June 22, 2011), *citing* Pedraza v. Meyer, 919 F.2d 317, 318 n.1 (5th Cir. 1990). Warden Dewberry's testimony indicated that religious exemptions are not generally made for members of any faith, although supervisors have the discretion to accommodate individual inmates, and the Ali case involved a Muslim prisoner who unsuccessfully sought a faith-related exemption from working in the packing plant.[1] Finney's complaint on this point is without merit.

Finney also complains that he received disciplinary cases for refusing to work. He mentions a case which he received in which he lost his classification status, but the prison records show that this case was for possession of nuisance contraband and not related to his working in the kitchen. These records also show, and Finney does not dispute, that he did not lose any good time in any of the disciplinary cases of which he complains; as a result, Finney has not shown that any of these disciplinary cases deprived him of a constitutionally protected liberty interest.

---

[1] Although Finney's factual testimony at the evidentiary hearing is presumed to be true, this presumption does not apply to conclusory allegations. *See, e.g.*, Iqbal v. Ashcroft, 129 S.Ct. 1937, 1949 (2009) (allegations in a complaint are accepted as true in the context of a motion to dismiss, but this principle in inapplicable to legal conclusions); Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (stating that "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation).

5

The Supreme Court has held that the States may, under certain circumstances, create liberty interests which are protected by the Due Process Clause, but these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Conner, 115 S.Ct. 2293, 2301 (1995). The Court held that the operative interest involved in determining whether or not a liberty interest exists is the nature of the deprivation rather than the language of prison regulations.

In this regard, the Fifth Circuit has held that punishments such as cell and commissary restriction and the reduction in classification status do not impose atypical and significant hardships upon an inmate in relation to the ordinary incidents of prison life. Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir. 1996); Malchi v. Thaler, 211 F.3d 953, 959 (5th Cir. 2000). Under certain circumstances, the loss of good time could inflict a punishment imposing an atypical and significant hardship upon an inmate, because the loss of such time could result in the denial of a liberty interest in early release from prison; however, in this case, Finney did not lose any good time in any of the disciplinary cases of which he complains. In the absence of any forfeiture of good time, Finney has not shown that any of these disciplinary cases deprived him of a constitutionally protected liberty interest. Malchi, 211 F.3d at 959.

The Fifth Circuit has held that in determining whether state action has violated an individual's right to procedural due process, the district court must first address whether or not the state action has deprived the person of a protected life, liberty, or property interest. Augustine v. Doe, 740 F.2d 322, 327 (5th Cir. 1984). In this case, Finney has not shown that he was deprived of a protected life, liberty, or property interest as a result of the disciplinary actions which he received. His claims concerning these disciplinary cases are without merit.

Nor do the general legal theories advanced in the attachment to Finney's complaint offer him any basis for relief. His conclusory allegations concerning equal protection do not set out any basis

for relief, as noted above, and he has failed to show that he was denied any process which he was due. Nor do the federal criminal statutes to which Finney refers offer any basis for relief in a civil rights lawsuit. *See, e.g.*, Oliver v. Collins, 914 F.2d 56 (5th Cir. 1991) (no constitutional right to have someone else criminally prosecuted); Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) (private citizens lack a justiciably cognizable interest in the prosecution or non-prosecution of another).

Finally, Finney contends that he has been the victim of retaliation. The Fifth Circuit has held that the elements of a claim under a theory of retaliation are the invocation of a specific constitutional right, the defendant's intent to retaliate against the plaintiff for his exercise of that right, a retaliatory adverse act, and causation, which is a showing that but for the retaliatory motive, the action complained of would not have occurred. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). This requirement places a heavy burden upon inmates, because mere conclusionary allegations will not suffice; instead, the inmate must produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). The relevant showing must be more than the prisoner's personal belief that he is the victim of retaliation. Johnson, 110 F.3d at 310, *citing* Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995).

In this case, Finney has offered nothing beyond conclusory allegations to show that he has been the victim of retaliation, nor has he shown that but for the alleged retaliatory motive, the actions complained of would not have occurred. At the evidentiary hearing, he acknowledged that he did not know any basis for retaliation, although he later guessed that it might have been because he had written a grievance on Captain Marshall. However, Finney did not explain what retaliatory act was taken against him because he wrote a grievance on Marshall, which act would not have occurred but for a retaliatory motive; making him work on Sunday occurred before he wrote the grievance, and he offers nothing to show that he would not have received the disciplinary cases for refusing to work because of a retaliatory motive rather than because of the fact that, as Finney acknowledged, he did

7

refuse to work on Sundays. The unnamed officer's comments as to how they "did not like Mormons" also does not show retaliatory intent or otherwise state a cause of action. Bender v. Brumley, 1 F.3d 271, 274 n.3 (5th Cir. 1993) (mere words do not set out a Section 1983 claim).

The Fifth Circuit has cautioned as follows:

> The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.

Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). The Court went on to explain that district courts must "carefully scrutinize" claims of retaliation in order to ensure that prisoners do not "inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around themselves." Woods, 60 F.3d at 1166; *accord*, Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990) (noting that "while a prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform."). As the Eighth Circuit explained, any other rule would allow a prisoner to openly flout prison regulations after filing a grievance and then bring a claim under Section 1983 arguing that prison officials disciplined him in retaliation for filing a grievance. Orebaugh, 910 F.3d at 528.

In the present case, Finney cannot refuse to work and then claim that the disciplinary cases which he received for refusing to work were given to him as retaliation. Nor has he offered anything to suggest that the disciplinary case which he received for possession of contraband was given to him in retaliation; at the evidentiary hearing, Finney acknowledged that he possessed the magazine for which he received the contraband case. Finney has failed to meet the elements of a retaliation cause of action and his claim on this point is without merit.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any

portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Finney's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted. Consequently, his lawsuit may be dismissed as frivolous and for failure to state a claim under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. 28 U.S.C. §1915A. It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **27** day of **November, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE